UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/9/06

BEATIE AND OSBORN LLP,

Plaintiff,

- against -

**OPINION AND ORDER**

PATRIOT SCIENTIFIC CORPORATION,
JEFFREY WALLIN and LOWELL
GIFFHORN,

05 Civ. 6425 (PKL)

Defendants.

**APPEARANCES**

RUSSEL H. BEATIE, ESQ.
MATTHEW P. HEISKELL, ESQ.
Beatie and Osborn LLP
521 Fifth Avenue
New York, New York 10175

Attorneys for Plaintiff

JARED B. STAMELL, ESQ.
Stamell & Schager, LLP
One Liberty Plaza, 35th Floor
New York, New York 10006-1404

CHARLES T. HODGE, ESQ.
Post, Kirby, Noonan & Sweat LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, California 92101-3387

Attorneys for Defendants

**LEISURE, District Judge:**

Plaintiff Beatie and Osborn, LLP ("B & O"), a New York law firm, brings this suit to collect unpaid fees from its former client, Patriot Scientific Corporation ("Patriot"), a California technology company. B & O filed the complaint against Patriot and individual defendants Jeffrey Wallin and Lowell Giffom in the Supreme Court for the State of New York, County of New York. B & O sues Patriot for breach of a retainer agreement, breach of a subsequent fee agreement, and damages under theories of quantum meruit and unjust enrichment. B & O also sues Wallin and Giffhorn for tortious interference with the retainer agreement and the fee agreement. Defendants removed the action to this Court based on diversity jurisdiction and subsequently moved to dismiss on various grounds or, in the alternative, transfer the case to the Southern District of California. Meanwhile, plaintiff has moved to remand this action to state court on the ground that defendants failed to follow the proper removal procedure. For the reasons set forth below, plaintiff's motion is denied, and defendants' motions are granted in part and denied in part.

## BACKGROUND

B & O is a limited liability partnership organized under the laws of New York, and maintains its principal place of business on the island of Manhattan. (Compl. ¶ 3.) Patriot is incorporated under the laws of Delaware and maintains its principal place of business in San Diego, California. (Compl. ¶ 6.) Patriot is engaged in the business of developing, licensing, and owning intellectual property, integrated circuits, and systems level engineering. (Compl. ¶ 7.) Wallin is a California resident who, during the relevant time, was the chief executive officer of Patriot. (Compl. ¶ 8.) Giffhorn, also a California resident, was the chief financial officer and a member of the board of directors of Patriot during the relevant time. (Compl. ¶ 9.)

2

One of Patriot's key assets is the patent rights to a microprocessor technology known as a "High Performance Microprocessor Having Variable Speed System Clock" (the "'336 Patent"). (Compl. ¶ 7.) In 2002, recently having begun a program of licensing and infringement litigation to respond to the unauthorized use of Patriot's patented technology (Compl. ¶ 14), Patriot, through various representatives, approached Russel H. Beatie, a member of B & O, about retaining the firm to help Patriot negotiate license agreements and prosecute infringement claims based on Patriot's portfolio of patents, including the '336 Patent (Compl. ¶ 15). In the summer of 2002, a Patriot board member[1] asked Beatie if B & O would act as lead counsel for Patriot in its licensing and infringement litigation program. (Compl. ¶ 18.) Beatie agreed on the conditions (1) that he could associate John E. Lynch, Esq., a patent specialist and personal friend of Beatie's, as co-counsel; and (2) that he and Lynch could investigate the merits of the litigation program thoroughly. (Compl. ¶ 19.) After a number of telephone conferences in which Wallin and Beatie discussed terms and conditions, Patriot sent B & O the final terms for a retainer agreement on October 1, 2002. B & O and Patriot entered into the retainer agreement (the "Retainer Agreement") on November 1, 2002. (Compl. ¶ 34.) The Retainer Agreement provided that:

> This agreement and related matters not covered by the specifics of this agreement shall be governed by the laws of the State of New York, disputes shall be resolved in the federal or state courts of the City and State of New York, and the parties to this agreement consent to jurisdiction and venue in the City and State of New York.

(Compl. Ex. A ¶ 7.) Around the time the Retainer Agreement was executed, Lynch and Beatie interviewed Patriot's former patent counsel for the company's invention and patent prosecution

---

[1] The board member is unnamed in the complaint.

process, Willis E. Higgins, Esq., who at that time was practicing in retirement in Maine.[2] (Compl. ¶ 27.) On February 27, 2004, Patriot and B & O entered into an agreement (the "Fee Agreement") specifying the manner by which Patriot was to pay for fees and expenses related to the patent litigation undertaken by B & O. (Compl. ¶ 43.)

As Patriot's lead counsel, B & O filed five actions for patent infringement against alleged infringing manufacturers. (Compl. ¶ 46; Beattie Aff. ¶ 19.) B & O also defended Patriot in a related declaratory judgment action in the Northern District of California. (Beattie Aff. ¶ 20.) In addition, in order to pursue the infringement actions, B & O filed a separate action in the Northern District of California (the "Inventorship Action") against Charles H. Moore, a co-inventor of Patriot's technology, and Moore's successors-in-interest for declaratory judgment on inventorship and ownership of the '336 Patent and its family of patents. (Compl. ¶ 46.)

B & O claims that it was forced to file the Inventorship Action subsequent to the infringement actions because Patriot had misrepresented key facts regarding the '336 Patent during the negotiation of the Retainer Agreement. According to B & O, prior to executing the Retainer Agreement in November 2002, Beatie and Lynch had insisted that Wallin and Giffhorn arrange meetings with Moore and Russell H. Fish, III, the co-inventor of Patriot's technology, with the goal of enlisting their cooperation and assistance with Patriot's licensing and infringement program. (Compl. ¶ 29.) B & O alleges that Wallin and Giffhorn declined to arrange any such meetings, instead assuring Beatie and Lynch (1) that Moore would cooperate and would support Patriot's program and (2) that Fish's cooperation was unnecessary because Patriot owned all the rights that Fish had ever had in the patents in question. (Compl. ¶¶ 30-31.) Wallin and Giffhorn assured Beatie and Lynch that they had resolved all inventorship issues in

---

[2] The complaint does not make clear the exact date on which Higgins was interviewed. Nor does it make clear whether Higgins was interviewed by only Lynch or by Lynch and Beatie in tandem. (See Compl. ¶¶ 27, 35, 62-63.) These issues are not important for the purposes of this decision, however.

4

favor of Patriot and that Patriot had clear title to the patents in its portfolio, including the '336 Patent. (Compl. ¶ 33.) However, in December 2002, Wallin and Giffhorn revealed that inventorship and ownership of the '336 Patent had been recorded inaccurately in the Patent and Trademark Office, and that Moore, through an agent, claimed an undivided one-half interest in all the patents in Patriot's portfolio, including the '336 Patent. (Compl. ¶ 36.) A review by B & O showed that inventorship of other patents in Patriot's portfolio was also unresolved. (Compl. ¶ 39.)

The relationship between B & O and Patriot ultimately fell apart. During discovery in the Inventorship Action, Patriot moved to disqualify B & O on the ground that Beatie and Lynch had breached Moore's attorney-client privilege when Lynch interviewed Higgins. (Compl. ¶ 62.) The Honorable Jeremy D. Fogel, U.S. District Judge for the Northern District of California, barred Higgins' testimony and disqualified B & O. (Compl. ¶ 63.) B & O offered to prepare and file, free of charge, a mandamus petition appealing the district court's decision. (Compl. ¶ 64.) Wallin and Giffhorn refused to authorize B & O to file the petition, giving no reason for their refusal. (Compl. ¶ 65.) B & O alleges that Wallin and Giffhorn refused to seek review because they wanted to tell Patriot's board of directors that, with the disqualification of B & O in place, Patriot had no obligation to pay B & O. (Compl. ¶ 67.)

On June 7, 2005, Patriot announced that it had settled the Inventorship Action. (Compl. ¶ 70.) Under the terms of the settlement (the "Settlement"), Patriot granted the defendants in that action responsibility for the commercialization and licensing of the patent portfolio, from which program Patriot will receive payments in addition to sharing revenue. (Compl. ¶¶ 71-72.) In addition, Patriot entered into a license agreement (the "License Agreement") with semiconductor company Advanced Micro Devices, Inc. on February 21, 2005. (Compl. ¶ 57.) B & O now

claims that, pursuant to the terms of the Retainer Agreement, it is entitled to a share of the payments Patriot receives under the Settlement and the Licensing Agreement. (Compl. ¶¶ 74-83.)

## DISCUSSION

### I. Subject Matter Jurisdiction

Patriot argues that the Court lacks subject matter jurisdiction because B & O is bound by the California Mandatory Fee Arbitration Act ("MFAA"), which requires that an attorney provide notice to a client of its right to arbitrate fee disputes before an attorney may sue the client for fees in court.[3] (See Mem. Law Supp. Def. Patriot's Mot. Dismiss 7-8.) B & O, however, argues that its claims under the Retainer Agreement are governed by New York law, not California law and the MFAA, and that therefore it had no obligation to provide notice. (See Mem. Law Opp'n Def. Patriot's Mot. Dismiss 5.)

#### A. Choice of Law

A federal court sitting in diversity applies the conflict-of-law rules of the forum state. Fed. R. Evid. 501; Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In cases arising from contracts that include a choice-of-law clause, New York courts follow the test set forth in the Restatement (Second) of Conflicts of Laws.[4] Accordingly, New York courts may

---

[3] As discussed below, MFAA arbitration is mandatory for an attorney when initiated by a client. Patriot indicated in its motion papers that it had initiated MFAA arbitration of B & O's fee dispute in California. (Mem. Law Supp. Def. Patriot's Mot. Dismiss 8; Steele Aff. ¶ 2.) However, B & O recently informed the Court that this arbitration proceeding was terminated after Patriot filed a malpractice suit against B & O in California state court. See Letter from Russel H. Beatie, Esq., to the Court, dated April 7, 2006 at 2.

[4] Section 187(2) of the Restatement (Second) Conflict of Laws states the following:
> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination

6

refuse to enforce a choice-of-law clause only where (1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute. See Radioactive, J.V. v. Manson, 153 F. Supp. 2d 462, 469-70 (S.D.N.Y. 2001) (citing Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co., No. 94 Civ. 8301, 2000 WL 1702039, at *12 (S.D.N.Y. Nov. 13, 2000) (Keenan, J.)); see also Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000) ("New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."). Here, the parties' choice of New York law clearly has a reasonable basis: B & O is a New York limited liability partnership, is engaged in the practice of law in New York, and maintains its principal place of business in New York. (Compl. ¶ 3.) Therefore, the Court is left with the question of whether the application of New York law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute. This inquiry involves two steps: The Court first must determine whether California law would govern this dispute in the absence of the parties' contractual choice-of-law provision; and, if so, the Court must decide whether the application of New York law would violate a fundamental public policy of California. See SG Cowen Sec. Corp. v. Messih, No. 00 Civ. 3228, 2000 WL 633434, at *2-4 (S.D.N.Y. May 17, 2000) ("The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties." (quoting S. Int'l Sales Co. v. Potter & Brumfield Div. of AMF Inc., 410 F. Supp. 1339, 1341-42

---

of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. Restatement (Second) Conflict of Laws § 187(2) (1971).

7

(S.D.N.Y. 1976) (internal quotation marks omitted))); see also Restatement (Second) Conflict of Laws § 187 cmt. g (1971) (same).

In contract cases, New York courts apply a "center of gravity" or "grouping of contacts" approach to decide choice-of-law questions. See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997) (citing Babcock v. Jackson, 191 N.E.2d 279, 283-84 (N.Y. 1963)). Using this approach, "courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." Id. (citing In re Allstate Ins. Co. & Stolarz, 613 N.E.2d 936, 940 (N.Y. 1993)). In the instant action, while contacts exist with both New York and California, California contacts predominate.[5] The Retainer Agreement was negotiated in both New York and California, but the bulk of B & O's representation of Patriot took place in California courts. Three of the five patent infringement actions that first were filed in New York district courts were transferred promptly and consolidated in California, where they were litigated. B & O defended Patriot in a declaratory relief action that Intel

---

[5] Plaintiff cites Butler Fiztgerald & Potter v. Ryan, No. 92 Civ. 0006, 1992 WL 315635 (S.D.N.Y. Oct. 22, 1992), as support for the claim that New York has paramount interest in this action. In Butler, a New York law firm sued three New Jersey clients in New York for fees generated by legal services contemplated by a retainer agreement that did not include a choice-of-law provision. The defendants moved to dismiss plaintiff's action for failure to state a claim, arguing, *inter alia*, that the plaintiff failed to give the defendants proper notice of the availability of binding fee arbitration as required under New Jersey law. Id. at *1. The court applied New York law, finding that New York had the paramount interest in the litigation. Id. at *2.

While its facts bear some similarity to the instant case, Butler is distinguishable. Like B & O, the plaintiff law firm in Butler was a professional corporation organized under the laws of New York and maintained its principal place of business in New York. However, in finding that New York had a greater interest in the issue to be resolved, the Butler court also noted that the plaintiff performed substantial legal services in New York and that meetings between the parties, with few exceptions, occurred in New York. As the court stated:

> [W]here a New York law firm is seeking attorney fees for *legal work performed mostly in New York,* and by attorneys who are duly admitted to practice in New York, New York has the paramount [or substantial] interest in the matter and the applicable law regarding the right to payment of attorney fees . . . is that of New York.

Id. (quoting Kramer, Levin, Nessen, Kamin & Frankel v. Arnoff, 638 F. Supp. 741 (S.D.N.Y. 1986) (internal quotation marks omitted)) (brackets in original) (emphasis added). Here, unlike in Butler, the legal work was performed mostly not in New York, but in California.

Corporation filed and litigated in California, and the Inventorship Action, in which B & O ultimately was disqualified, was filed and litigated in California.

Having found that California law would govern this dispute in the absence of the Retainer Agreement's choice-of-law provision, the Court must address whether applying New York law in accordance with that provision would violate a fundamental public policy of California. The Court answers this question in the negative.

Citing Aguilar v. Lerner, 88 P.3d 24 (Cal. 2004), defendants argue that the MFAA is "a firmly entrenched matter of California public policy designed to foster prompt and expeditious resolution of attorney fee disputes." (Mem. Law Supp. Def. Patriot's Mot. Dismiss 8.) Aguilar involved a fee dispute between an attorney and a client who had entered into a retainer agreement that, unlike the agreement in this case, contained an arbitration clause pursuant to which the parties agreed to submit any disputes arising out of the client's legal representation to binding arbitration. Such an arbitration clause normally would be enforceable under the California Arbitration Act[6] ("CAA"). In Aguilar, the Supreme Court of California observed, as it had observed many times previously, that California has a "strong public policy" in favor of arbitration. However, in making this point, the Aguilar court was discussing the CAA, not the MFAA. The CAA regulates arbitration agreements. As one California court has noted, "[t]he fundamental premise of the [CAA] is that '[a] written agreement to submit [either a present or a future controversy] to arbitration . . . is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.'" Vandenberg v. Super. Ct., 982 P.2d 229, 238 (Cal. 1999) (quoting Cal. Civ. Proc. Code § 1281 (West 1982)). The CAA establishes procedures for the enforcement of arbitration agreements, Cal. Civ. Proc. Code §§ 1281.2-1281.96; sets forth default rules for the conduct of arbitration proceedings, id. §§ 1282-1284.3;

---

[6] Cal. Civ. Proc. Code §§ 1281-1295 (West 1982).

describes the circumstances under which arbitration awards may be vacated, corrected, confirmed, and enforced, id. §§ 1285-1288.8; and specifies the procedures for judicial proceedings relating to arbitration matters, id. §§ 1290-1294.2. See Vandenberg, 982 P.2d at 238 (describing the statutory scheme under the CAA). As the Aguilar court noted, the CAA "represents a comprehensive statutory scheme regulating private arbitration in this state. Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.'" Aguilar v. Lerner, 88 P.3d 24, 28 (Cal. 2004) (quoting Moncharsh v. Heily & Blase, 832 P.2d 899, 902 (Cal. 1992)); see also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street, 673 P.2d 251, 257 (Cal. 1983) (same); Madden v. Kaiser Foundation Hospitals, 552 P.2d 1178, 1182 (Cal. 1976) ("Arbitrations are now usually covered by statutory law, as they are in California. Such statutes evidence a strong public policy in favor of arbitrations, which policy has frequently been approved and enforced by the courts.").

The MFAA is an entirely distinct statutory scheme from the CAA. Enacted in 1978 following a finding by the American Bar Association that disputes over legal fees were the most serious problem in the relationship between attorneys and their clients, its purpose is to provide a simple and efficient structure within which attorneys and clients could resolve disputes over legal fees. See James P. Hargarten, Fine Tuning California's Mandatory Attorney Fee Arbitration Statute, 16 U.S.F. L. Rev. 411, 413 (1982). The MFAA is narrowly drawn: While nearly any civil dispute can be arbitrated under the CAA, the MFAA only applies to disputes concerning attorney "fees, costs, or both," Cal. Bus. & Prof. Code § 6200(a) (West 2003), and explicitly does not apply to "[c]laims for affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct," id. § 6200(b)(2). Unlike

under the CAA, the obligation to arbitrate under the MFAA does not flow from the parties' agreement, but rather from the statute itself. The MFAA provides that, at the option of the client, attorneys must submit to arbitration any fee dispute: "Unless the client has agreed in writing to arbitration under this article of all disputes concerning fees, costs, or both, arbitration under this article shall be voluntary for a client and shall be mandatory for an attorney if commenced by a client." Id. § 6200(c). Whereas arbitration awards rendered pursuant to the CAA are generally binding, an arbitration under the MFAA does not bind the parties,[7] either of whom has the right to seek a trial de novo following an arbitration. Id. § 6204(a).

While the Court acknowledges California's strong public policy of enforcing arbitration agreements, it cannot conclude that "the prompt and expeditious resolution of attorney fee disputes" in the absence of an arbitration agreement constitutes a fundamental public policy of California. Defendants point to no authority establishing that the policy underlying the MFAA is a "fundamental" one. Rather, defendants simply cite to Aguilar, a case involving a retainer agreement that, unlike the agreement in the instant action, contained an arbitration clause pursuant to which the parties agreed to submit disputes to binding arbitration. As noted above, Aguilar is one of a long string of cases in which California courts have pointed out California's strong policy in favor of enforcing arbitration agreements pursuant to the CAA. However, neither Aguilar nor any other case of which the Court is aware purports to find a "fundamental" public policy behind the statutory provisions of the MFAA.[8] The Court cannot conclude on this

---

[7] Section 6204(a) of the MFAA provides, however, that "[t]he parties may agree in writing to be bound by the award of arbitrators appointed pursuant to this article at any time after the dispute over fees, costs, or both, has arisen." Cal. Bus. & Prof. Code § 6204(a). Here, the parties have made no such agreement.

[8] The distinction between the CAA and the MFAA is compounded by the fact that arbitration under the MFAA is nonbinding. As noted above, arbitration under the CAA is generally binding, and this element of finality to the arbitration process works to advance California's "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." Aguilar, 88 P.3d at 28 (quoting Moncharsh v. Heily & Blase, 832 P.2d 899, 902 (Cal. 1992)). Nearly ninety years ago, the Supreme Court of California declared that "[t]he policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to

11

basis that the efficient resolution of attorney fee disputes in the absence of an arbitration agreement constitutes a fundamental public policy of California sufficient to prevent the application of New York law in the present case. Therefore, the Court finds that New York law, not California law, governs B & O's contract claims arising from the Retainer Agreement, *viz.*, its claim for breach of the Retainer Agreement and its claims for damages under quantum meruit and unjust enrichment. Cf. Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1540 (2d Cir. 1997) (stating that under New York law, the general rule is that "a contractual choice of law provision governs only a cause of action sounding in contract, not one sounding in tort").

In addition, while it is true, as Patriot notes (Mem. Law Supp. Def. Patriot's Mot. Dismiss 4), that the Fee Agreement has no choice of law provision, the Court finds that the Retainer Agreement's choice of law provision encompasses B & O's claim for breach of the Fee Agreement as well. The Retainer Agreement's choice of law provision states that New York law will govern "related matters not covered by the specifics of" the Retainer Agreement. (Compl. ¶ 7.) The crux of B & O's representation of Patriot under the Retainer Agreement was the prosecution of infringement claims based on Patriot's portfolio of patents. The Fee Agreement governs the manner by which Patriot is to pay to B & O fees and expenses incurred during the patent litigation that was contemplated under the Retainer Agreement. Specifically, the Fee Agreement states:

> Patriot . . . agrees to provide instructions to attorney Russel Beatie, Jr., from time to time as the need arises, directing him to disburse funds from the Fiduciary Account to cover fees and expenses (including but not limited to consulting fees and expenses and expert witness fees and expenses) *related to the patent litigation* . . . being undertaken by Beatie and Osborn on behalf of Patriot.

---

encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." Utah Constr. Co. v. W. Pac. Ry. Co., 162 P. 631, 632 (Cal. 1917); see also Moncharsh v. Heily & Blasé, 832 P.2d 899, 903 (Cal. 1992) ("Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts." (quoting Blanton v. Womancare, Inc., 696 P.2d 645, 649 n.5 (Cal. 1985)).

(Giffhorn Ex. A. at 1 (emphasis added).) Because the Fee Agreement sets forth guidelines for the payment of fees and expenses related to the patent litigation, it is precisely the sort of "related matter not covered by the specifics of" the Retainer Agreement contemplated by the Retainer Agreement's choice-of-law provision. Accordingly, the Court finds that the Retainer Agreement's choice-of-law provision applies to the Fee Agreement, and consequently that New York law applies to B & O's breach of contract claim with respect to the Fee Agreement.

Because New York law applies in this action, the Court finds that plaintiffs had no obligation to notify Patriot of its right to MFAA arbitration before initiating an action for fees. Therefore, Patriot's motion to dismiss for lack of subject matter jurisdiction is denied with respect to B & O's claims for breach of contract, quantum meruit, and unjust enrichment.[9]

II. Removal Procedure

The Court next will address B & O's argument that this case should be remanded to state court because of a defect in the removal procedure. "Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." In re NASDAQ Market Makers Antitrust Litig., 929 F. Supp. 174, 178 (S.D.N.Y. 1996) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941))). Therefore, "removal statutes are to be 'strictly

---

[9] Patriot also argues that the Retainer Agreement's choice-of-law clause is not broad enough to reach B & O's non-contract claims—i.e., B & O's claims against defendants Wallin and Giffhorn for tortious interference with the Retainer Agreement and the Fee Agreement. (Mem. Law Supp. Def. Patriot's Mot. Dismiss 12.) See Fin. One Pub. v. Lehman Bros. Special Financing, 414 F.3d 325, 335 (2d Cir. 2005) ("Under New York law, then, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause." (citing Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1995))). However, the Court does not reach this issue because, as discussed below, personal jurisdiction does not exist with respect to the individual defendants in this case, and B & O's tortious interference claims are therefore dismissed.

13

construed against removal and all doubts should be resolved in favor of remand.'" Berrios v. Our Lady of Mercy Med. Ctr., No. 99 Civ. 21, 1999 WL 92269, at \*2 (S.D.N.Y. Feb. 19, 1999) (quoting Leslie v. Banctec Serv. Corp., 928 F. Supp. 341, 347 (S.D.N.Y. 1996)). The removing party bears the burden of proving that it has met the requirements for removal. See Smith v. Kinkead, No. 03 Civ. 10283, 2004 WL 728542, at \*1 (S.D.N.Y. April 5, 2004) (citing Codapro Corp. v. Wilson, 997 F. Supp. 322, 325 (E.D.N.Y. 1998)); see also NASDAQ Market Makers, 929 F. Supp. at 178.

Although there is no statutory requirement that all defendants either must join the petition for removal or consent to removal, courts have consistently interpreted 28 U.S.C. § 1446 as requiring that all defendants consent to removal within the statutory thirty-day period, a requirement known as the "rule of unanimity." Owczarek v. The Austin Co., No. 03 Civ. 0750, 2004 WL 625273, at \*1 (W.D.N.Y. Feb. 11, 2004); Smith, 2004 WL 728542, at \*2-3 (citing Payne v. Overhead Door Corp., 172 F. Supp. 2d 475, 476-77 (S.D.N.Y. 2001); Ell v. S.E.T. Landscape Design, Inc., 34 F. Supp. 2d 188, 193 (S.D.N.Y. 1999) (collecting cases demonstrating "widespread agreement among the district courts, including those in the Second Circuit," regarding this principle). "While courts generally do not require all defendants to sign the removal petition itself, most courts have required some form of unambiguous written evidence of consent to the court in timely fashion." Codapro Corp. v. Wilson, 997 F. Supp. 322, 325 (E.D.N.Y. 1998) (quoting Michaels v. State of N.J., 955 F. Supp. 315 (D.N.J. 1996)); see also Payne, 172 F. Supp. 2d at 477 (noting that "the majority of courts interpret 'consent' to mean that each defendant must submit written consent unambiguously agreeing to removal"); Ell, 34 F. Supp. 2d at 193 (stating that 'unambiguous written evidence of consent' by all defendants is required" (quoting Codapro, 997 F. Supp. at 325)).

14

B & O argues that the removal procedure was defective because defendants did not file any written consents to removal. (Pl.'s Mem. Law Supp. Mot. Remand 7.) B & O concedes that the Notice of Removal states that it was filed on behalf of "Defendants." (Pl.'s Mem. Law Supp. Mot. Remand 7.) However, B & O infers from this fact that the Notice was filed only on behalf of defendants Patriot and Giffhorn "because defendant Wallin claims he has not been served." (Pl.'s Mem. Law Supp. Mot. Remand 7.) As a consequence, plaintiff argues, Wallin was required to file "unambiguous written evidence of consent" with the court. (Pl.'s Mem. Law Supp. Mot. Remand 7.)

B & O's argument fails. While the case law in this Circuit makes clear that, in a case involving multiple defendants, all defendants are not required to sign the same notice of removal, see e.g., Codapro, 997 F. Supp. at 325, it does not follow that all defendants *may not* sign the notice of removal. Indeed, § 1446(a) provides that "[a] defendant or defendants desiring to remove any civil action . . . shall file in the district court . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure." 28 U.S.C. § 1446(a) (2000). Defendants have done precisely this. The Notice of Removal states that "*[d]efendants* give notice under 28 U.S.C. § 1446 and Local Rule 81.1 that the above captioned action . . . is removed to the United States District Court for the Southern District of New York." (Notice Removal 1 (emphasis added).) In its caption, the Notice identifies defendant Patriot, defendant Wallin, and defendant Giffhorn as "Defendants." (Notice Removal 1.) At two points in the Notice—above the caption and again below the signing attorney's signature—the signing attorney identifies himself, his law firm, and his co-counsel firm as "Attorneys for Defendants." (Notice Removal 1-2.) Counsel thus clearly indicated that he was signing the Notice for defendants Patriot, Wallin, and

Giffhorn.[10] Because it is clear that all defendants unambiguously joined in the Notice of Removal, B & O's motion to remand is denied.

III. Service of Process

Defendant Wallin moves to dismiss the complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure for insufficiency of service of process. When a defendant raises a Rule 12(b)(5) "challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." Preston v. New York, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002). "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). Furthermore, "[c]onclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process." Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), aff'd, 173 F.3d 844 (2d Cir. 1999).

Section 313 of the New York Civil Practice Law and Rules provides that any person subject to New York jurisdiction may be served outside New York in the same manner by which service is made within the state. N.Y. C.P.L.R. § 313 (McKinney 2001). An individual may be served "by delivering the summons . . . to a person of suitable age and discretion at [their] actual place of business and . . . by mailing the summons by first class mail to the person to be served at

---

[10] The Court observes that a signing attorney's joint representation of defendants may not, by itself, satisfy the "rule of unanimity." See, e.g., Lampkin v. Media Gen., Inc., 302 F. Supp. 2d 1293, 1295 (M.D. Ala. 2004) ("[Defendants] also suggest that, because they shared the same attorney and the notice was signed by that attorney, the notice was a joint notice of removal, thereby satisfying the rule of unanimity. However, even if joint counsel intended to act on behalf of both corporations, it is unclear how [defendants] expected this court and Lampkin to be aware of their objective, as the notice itself gives no indication of their intent."); Smith v. Union Nat'l Life Ins. Co., 187 F. Supp. 2d 635, 645 (S.D. Miss. 2001) (finding removal procedure improper even where two defendants were represented by the same counsel, because counsel failed to indicate clearly on the notice of removal that he was signing the notice for both defendants).

16

his or her actual place of business in an envelope bearing the legend 'personal and confidential'"

with no return address. Id. 308(2). B & O submits that its process server properly served Wallin

by (1) personally serving a copy of the summons and complaint on Dawn Raagas, Patriot's office

manager, at Patriot's principal place of business on June 17, 2005, and (2) mailing a copy of the

summons and complaint in an envelope marked "Personal and Confidential" to Wallin at the

same address. (Pl.'s Mot. Opp'n Def. Wallin's Mot. Dismiss 3-4.) B & O has provided an

affidavit of service of Quan Pham, the process server, attesting to these facts. (Heiskell Decl.

Ex. C.)

Wallin, however, argues that this service was not effective because he was not employed

by Patriot when the process server left the summons and complaint at Patriot's place of business.

(Mem. Law Supp. Def. Wallin's Mot. Dismiss 2.) To support his claim, Wallin has produced a

letter from Patriot President and CEO David H. Pohl to Wallin, dated June 21, 2005, in which

Pohl confirms that Wallin's employment with Patriot was terminated on June 12, 2005, requests

that Wallin return all company property to Patriot, and notifies Wallin that his final paycheck is

enclosed. (See Wallin Supp. Decl. Ex. A.) Wallin also has produced a declaration by Raagas, in

which she described the circumstances of the delivery of the summons and complaint on June 17,

2005. Raagas states that, on Pohl's instructions, she told Pham that Patriot was not authorized to

accept service on behalf of Wallin. (Raagas Decl. ¶ 2.) According to Raagas, Pham left, but

returned some time later and left the papers, telling her "that he was instructed to leave the

paperwork with [her] anyway, even though [she] was clear with him that we could not accept the

papers." (Raagas Decl. ¶ 2.) Finally, Wallin has provided a copy of a June 15, 2005 press

release issued by Patriot, stating that "Patriot Scientific CEO and President Jeff Wallin and CFO

Lowell Giffhorn have left the Company although Giffhorn remains on the Board." (Wallin Supp. Decl. Ex. B.)

One might expect the matter to end here. However, B & O has pointed out a number of apparent inconsistencies regarding Wallin's claim that he was not employed by Patriot on the date of attempted service. First, the Notice of Removal, filed on July 14, 2005, states that Wallin's business address is 10989 Via Frontera, San Diego, California, the same address to which the service of process was delivered. (See Pl.'s Mem. Law. Supp. Mot. Remand 8; Notice Removal ¶ 3.) Second, Wallin's initial declaration states that his employment with Patriot terminated on June 18, 2005. (See Pl.'s Mem. Law. Opp'n Def. Wallin's Mot. Dismiss 4; Wallin Decl. ¶ 2.) Last, B & O points to a stock certificate dated July 22, 2005, which bears Wallin's signature. (Heiskell Decl. Ex. E.) In a supplemental declaration, Wallin states that the address listed on the Notice of Removal was an error (Wallin Supp. Decl. ¶ 8), as was his initial declaration's statement that he was employed by Patriot until June 18, 2005 (Wallin Supp. Decl. ¶ 7). Regarding the stock certificate, Wallin states that he believed that the signature was a reproduction used by Patriot's Utah-based stock transfer agent, who "was provided a facsimile of [Wallin's] signature as a form to use on such documents approximately two years ago." (Wallin Supp. Decl. ¶ 8.)

The inconsistencies highlighted by B & O raise a factual issue of whether Wallin was employed by Patriot on the date B & O attempted to serve him. Generally, a preliminary hearing pursuant to Federal Rule of Civil Procedure 12(d) would be appropriate to resolve such a contested factual issue. However, the Court need not resolve this issue because, as discussed below, B & O has not established personal jurisdiction over Wallin.[11]

---

[11] Even if it were to find that service upon Wallin was insufficient, the Court would proceed in the same manner, that is, by addressing Wallin's argument based on personal jurisdiction to determine whether B & O should be given

18

## IV. Personal Jurisdiction

### A. The Court's Jurisdiction over Defendant Wallin[12]

#### 1. Standard for a Rule 12(b)(2) Motion

When considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, it is well established that "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Metro. Life, 84 F.3d at 566. Ultimately, personal jurisdiction must be proven by a preponderance of the evidence, either at an evidentiary hearing or at trial. See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). "But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." Id.; see also Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

Furthermore, "[a]bsent a specific grant of jurisdiction, the reach of a federal district court's personal jurisdiction is coterminous with that of the personal jurisdiction of a court of general jurisdiction in the state in which the court sits." Geller Media Mgmt., Inc. v. Beaudreault, 910 F. Supp. 135, 137 (S.D.N.Y. 1996) (Leisure, J.) (citing Fed. R. Civ. P.

---

an opportunity to serve Wallin properly. Although Wallin has moved for dismissal pursuant to Rule 12(b)(5), dismissal on this basis would not be mandatory, as courts in this jurisdiction have "broad discretion to dismiss the action or retain the case but quash the service that has been made on the defendant." Howard v. Klynfeld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997) (internal quotation marks omitted), aff'd, 173 F.3d 844 (2d Cir. 1999) (quoting 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1354 (3d ed. 2004)).

[12] In its memorandum in opposition to defendants Patriot and Giffhorn's motion to dismiss, B & O concedes that this Court does not have personal jurisdiction over defendant Giffhorn. Therefore, the Court grants defendant Giffhorn's motion to dismiss on that ground.

4(k)(1)(A)). Thus, "the amenability of [an out-of-state defendant] to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." Metro. Life, 84 F.3d at 567 (quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)). To determine whether it has personal jurisdiction over Wallin, the Court must engage in a two-part inquiry. First, it must determine whether there is personal jurisdiction over Wallin under New York state law; second, if New York law provides for personal jurisdiction, the Court must determine whether the assertion of jurisdiction comports with the constitutional requirements of due process. Id.

There are two types of jurisdiction that a court may exercise over a defendant: general and specific. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). In the case of general jurisdiction, plaintiff's claim need not arise out of defendant's contacts with the forum state, but defendant's contacts must be substantial; with specific jurisdiction, however, defendant's contacts need not be as substantial, but plaintiff's claim must arise out of the contacts. These two types of jurisdiction are reflected both in New York's jurisdictional statutes, see N.Y. C.P.L.R. §§ 301-302 (McKinney 2001), and in the jurisprudence interpreting the due process limits of jurisdiction, see Helicopteros, 466 U.S. at 414.

B & O argues that the Court may exercise specific personal jurisdiction over defendant Wallin pursuant to section 302(a)(1) of the New York Civil Practice Law and Rules. (Pl.'s Mem. Law. Opp'n Def. Wallin's Mot. Dismiss 5-8.) However, Wallin contends that he lacks sufficient contacts with New York to permit the exercise of jurisdiction. (Mem. Law. Supp. Def. Wallin's Mot. Dismiss 3.)

## 2. Jurisdiction Under CPLR Section 302(a)(1)

Section 302(a)(1) allows a court to exercise specific jurisdiction over a non-domiciliary who, in person or through an agent, "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1) (McKinney 2001). Thus, jurisdiction is proper under section 302(a)(1) when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business. Id.; CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (requiring "an articulable nexus between the business transacted and the cause of action sued upon" (citing McGowan v. Smith, 419 N.E.2d 321, 323 (1981))). A non-domiciliary transacts business under section 302(a)(1) when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." CutCo Indus., 806 F.2d at 365 (quoting McKee Elec. Co. v. Rauland-Borg Corp., 229 N.E.2d 604, 607 (N.Y. 1967)). The following factors should be considered when determining whether a non-domiciliary has transacted business: (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the defendant negotiated or executed a contract in New York, and whether the defendant visited New York after executing the contract with the parties; (3) whether there is a choice-of-law clause in any such contract; and (4) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. See Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). Courts look to the totality of the circumstances to determine whether the defendant has engaged in such purposeful activity, and require a "substantial nexus" between the business transacted and the cause of action sued upon. See PDK Labs, Inc. v. Freidlander, 103 F.3d 1105, 1109 (2d Cir. 1997); Agency Rent a Car, 98 F.3d at 29-31; CutCo Indus., 806 F.2d at 365; Cedric Kushner Prods., Ltd. v. Thobela, No. 93

21

Civ. 4592, 1994 WL 163992, at *2 (S.D.N.Y. Apr. 22, 1994) (Leisure, J.). Indeed, jurisdiction cannot be founded upon "random," "fortuitous," or "attenuated" contacts. SAS Group, Inc. v. Worldwide Inventions, Inc., 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003) (citing CutCo Indus., 806 F.2d at 365); accord Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985). Notably, New York's provision for specific jurisdiction under section 302 does not extend as far as the federal Constitution permits. Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GMBH & Co., 150 F. Supp. 2d 566, 572 (S.D.N.Y. 2001).

Even if the "transacts business" requirement is satisfied, jurisdiction under section 302(a)(1) is not proper unless the cause of action "arises from" the defendant's contacts with the forum state. A cause of action "arises from" a defendant's New York contacts if the contacts are "substantially proximate to the allegedly unlawful acts." Avecmedia, Inc. v. Gottschalk, No. 03 Civ. 7831, 2004 WL 1586411, at *5 (S.D.N.Y. July 14, 2004) (quoting Xedit Corp. v. Harvel Indus. Corp., 456 F. Supp. 725, 729 (S.D.N.Y. 1978)). Thus, the business transacted by the foreign defendant in New York must "bear a substantial relationship to the transaction out of which the instant cause of action arises." McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981).

B & O argues that Wallin is subject to jurisdiction under section 302(a)(1) because of his extensive interaction with B & O during the negotiation of the Retainer Agreement and throughout B & O's representation of Patriot. (Pl.'s Mem. Law Opp'n Def. Wallin's Mot. Dismiss 6-7.) According to B & O, Wallin engaged in more than ten telephone conferences with Beatie and B & O associates when Patriot and B & O were negotiating the terms of the Retainer Agreement throughout 2002 (Beatie Aff. ¶ 11), and more than 150 telephone conferences with Beatie and B & O associates between January 2003 and May 2005 (Beatie Aff. ¶ 13). Presumably through these telephone conferences, Wallin negotiated the Retainer Agreement,

22

monitored the activities of B & O with respect to the various litigations, and communicated with B & O about litigation and licensing issues. (Beatie Aff. ¶ 10; see Wallin Decl. ¶ 2.) B & O also alleges that Wallin served as the sole negotiator on behalf of Patriot when Patriot failed to pay B & O pursuant to the Retainer Agreement. (Beatie Aff. ¶ 11.) These dealings are the sum of Wallin's New York contacts alleged by B & O.

While the state's long-arm jurisdiction may be invoked even if a defendant never enters New York, see Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43 (N.Y. 1988), "telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction," Burrows Paper Corp. v. R.G. Eng'g, Inc., 363 F. Supp. 2d 379, 386 (S.D.N.Y. 2005) (quoting Int'l Customs Assocs. v. Ford Motor Co., 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995)); see also Standard Enters., Inc. v. Bag-It, Inc., 673 F. Supp. 1216, 1220 (S.D.N.Y. 1987) ("Interstate telephone contacts do not generally have any great significance in § 302(a)(1) analyses."); Current Textiles Corp. v. Ava Indus., 624 F. Supp. 819, 821 (S.D.N.Y. 1985) ("In general, telephone conversations between litigants inside and outside of the state about the contract at issue will not sustain personal jurisdiction under section 302(a)(1) absent additional evidence that the out of state litigant purposefully availed himself of the privilege of conducting activities in New York State.") (citation omitted). Besides the above-referenced telephone conferences, B & O points to no other contact Wallin had with New York in connection with the Retainer Agreement or the subsequent dealings between B & O and Patriot. Wallin has resided in San Diego, California since 1999 and maintains no other residences. (Wallin Decl. ¶ 4.) Wallin has never lived in New York, owns no personal or real property in New York, and maintains no bank account in New York. (Wallin Decl. ¶¶ 4-5.) All of Wallin's discussions with B & O occurred either in face-to-face meetings Wallin had with

23

Beatie in San Diego or telephone conferences in which Wallin was located in California (Wallin Decl. ¶ 6.) Wallin never traveled to New York for business or pleasure during the term of his employment with Patriot (Wallin Decl. ¶ 7.)

Moreover, the clear majority of the performance under the Retainer Agreement occurred in California. B & O filed five infringement actions on behalf of Patriot against several manufacturers. (Compl. ¶ 46.) Three of these actions were filed in New York federal district courts and "promptly consolidated" in the Northern District of California. (Beatie Aff. ¶ 19.) B & O defended Patriot in a related declaratory judgment action brought by Intel in the Northern District of California. (Beatie Aff. ¶ 20.) B & O also filed the Inventorship Action in the Northern District of California. (Beatie Aff. ¶ 20.) Therefore, the consolidated patent infringement actions, the Intel declaratory judgment action, and the Inventorship Action all were litigated in the Northern District of California. Of the other work that B & O alleges it performed for Patriot—which includes work performed in Atlanta, Georgia (Beatie Aff. ¶ 12); Maine (Beatie Aff. ¶ 12); Dallas, Texas (Beatie Aff. ¶¶ 13, 16); Sierra City, California (Beatie Aff. ¶ 13); Pacific Grove, California (Beatie Aff. ¶ 14); San Francisco, California (Beatie Aff. ¶ 14); and Princeton, New Jersey (Beatie Aff. ¶ 14)—the only work with a New York connection is B & O's maintenance of a bank account in trust for Patriot in New York for fees and expenses related to the patent litigations (Beatie Aff. ¶ 18). In short, even viewing B & O's allegations in the light most favorable to it, the Court cannot find that the totality of Wallin's contacts with New York are sufficient to subject him to personal jurisdiction in New York.

B & O also argues that Wallin is subject to personal jurisdiction through Patriot's contacts with New York. (Pl.'s Mem. Law Opp'n Def. Wallin's Mot. Dismiss 7.) Wallin contends that all of his actions with respect to the underlying dispute, including his signing of the

Retainer Agreement, were done in his capacity as an officer of Patriot, and not in any personal capacity. (Mem. Law Supp. Def. Wallin's Mot. Dismiss 3.) However, under New York law, a corporation can act as the agent of a corporate officer and thus subject the officer to personal jurisdiction under section 302. See Retail Software Svcs., Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988) (citing Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 47 (N.Y. 1988) (holding that the fiduciary shield doctrine does not apply to any of the provisions of New York's long-arm statute)). Therefore, Wallin will not be protected from the exercise of personal jurisdiction by virtue of the fact that he acted only in his capacity as an officer of Patriot. Id. The New York Court of Appeals has made clear that a plaintiff need not establish a formal agency relationship between a corporation and an individual defendant officer to subject the officer to personal jurisdiction under section 302. See Kreutter, 522 N.E.2d at 44. Rather, the plaintiff "need only convince the court that [the corporation] engaged in purposeful activities in this State in relation to [the] transaction for the benefit of and with the knowledge and consent of the [officer defendant] and that [the officer defendant] exercised some control over [the corporation] in the matter." Id. That is, for a corporation to be considered an agent of an officer for personal jurisdiction purposes, a plaintiff must allege: (1) that the corporation engaged in purposeful activities in New York in relation to the transaction; (2) that the corporation's activities were performed for the benefit of the individual defendant; (3) that the corporation's activities were performed with the knowledge and consent of the individual defendant; and (4) that the individual defendant exercised some control over the corporation. See id.; Retail Software, 854 F.2d at 22 (finding that a corporation acted as the agent of individual defendant officers where the corporation "engaged in purposeful activities in the state (selling franchises) with the consent and knowledge of the defendants, who both benefited from those activities and exercised

25

extensive control over [the corporation] in the transaction underlying this suit"); Houbigant, Inc.
v. Dev. Specialists, Inc., 229 F.Supp.2d 208, 224 (S.D.N.Y. 2002) ("Agency is properly found if
the corporate entity 'engaged in purposeful activities within this state in relation to [the]
transaction for the benefit of and with the knowledge and consent of the [individual] and . . . [the
individual] exercised some control over [the corporate entity] in the matter.'" (quoting Kreutter,
522 N.E.2d at 44)); Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 985 (S.D.N.Y. 1992)
(finding that plaintiff made a sufficient claim that a corporation served as agent for individual
defendant officer in New York where plaintiff "asserted that the alleged patent infringement
occurred with [defendant's] knowledge and consent and for his benefit, and that he exercised
control over [defendant] in the matter").

Wallin himself has conceded that he was "principally involved" in negotiating the
Retainer Agreement. (Wallin Decl. ¶ 2.) Given the nature of Wallin's role in these negotiations
as well as his subsequent involvement in B & O's representation of Patriot, there can be no
question that Patriot's actions were performed with his knowledge and consent. However,
B & O nowhere alleges—either in the complaint or in any supporting affidavits—that Patriot's
activities were performed for Wallin's benefit. For that reason, the Court cannot find that Patriot
acted as Wallin's agent for the purposes of subjecting him to personal jurisdiction in New York.
Wallin's motion to dismiss for lack of personal jurisdiction is therefore granted.

B.    The Court's Jurisdiction over Defendant Patriot

The Retainer Agreement contains a choice-of-forum clause that provides that "disputes
shall be resolved in the federal or state courts of the City and State of New York, and the parties
to this agreement consent to jurisdiction and venue in the City and State of New York." (Compl.

¶ 3.) Therefore, Patriot has consented to the Court's jurisdiction if this provision is enforceable. Patriot argues that it is not.

The Court first addresses the question of what law governs the validity and interpretation of the forum selection clause of the Retainer Agreement. Neither party has addressed this question explicitly in their motion papers, although Patriot relies both on federal cases and New York statutory law. As a general rule, in diversity actions such as the present case, federal law governs matters of procedure, while state law controls matters of substantive law. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 80 (1938). The Second Circuit has held that federal law governs the validity of forum selection clauses in diversity actions. Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990) ("Questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature."); see also, e.g., Koninklijke Philips Elecs. v. Digital Works, Inc., 358 F. Supp. 2d 328, 331 (S.D.N.Y. 2005) (applying federal law to the question of the validity of a forum selection clause); GMAC Comm. Credit, LLC v. Dillard Dept. Stores, Inc., 198 F.R.D. 402, 406 (S.D.N.Y. 2001) (same).[13]

---

[13] The Court is bound to follow Jones as precedent, but it recognizes that this decision has not gone without criticism in this jurisdiction. See, e.g., Licensed Practical Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc., 131 F. Supp. 2d 393, 398-99 (S.D.N.Y. 2000) (Lynch, J.) (calling into question "whether, if the issue came before the Supreme Court, the Jones decision would prevail. It is strongly arguable that in a diversity case, the validity of such [forum selection] clauses should be determined by state law, which generally governs substantive questions involving the making and enforcement of contracts" (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 38-41 (1988) (Scalia, J., dissenting))). At any rate, it is not clear whether a different result would obtain if the Court were to apply New York law to the question of the forum selection clause's validity. As the Jones Court observed, 901 F.2d at 19, New York courts have cited with approval the standard from M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972), where the U.S. Supreme Court held that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"). However, section 5-1402 of New York's General Obligations law also provides that:

> any person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the action or proceeding arises out of or relates to any contract . . . for which a choice of New York law has been made in whole or in part pursuant to section 5-1401 and which (a) is a contract . . . relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b) which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state.

N.Y. Gen. Oblig. Law § 5-1402 (McKinney 2001). Patriot argues that this provision invalidates the forum-selection clause because B & O's claim for fees amounts to, "at best," only $200,000, (Mem. Law Supp. Def. Patriot's Mot.

27

The federal standard for whether to enforce a forum-selection clause is clear. "The Supreme Court [has] held that a court sitting in admiralty should enforce a contractual forum selection clause unless it is clearly shown that enforcement would be unreasonable and unjust or that the clause was obtained through fraud or overreaching." Jones v. Weibrecht, 901 F.2d 17, 18 (2d Cir. 1990) (per curiam) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)). The Second Circuit has applied this rule in diversity and other non-admiralty cases. See generally id. (collecting cases). Therefore, the Retainer Agreement's forum-selection clause will be enforced "unless it is shown that to enforce it would be 'unreasonable and unjust' or that some invalidity such as fraud or overreaching is attached to it." New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997).

Patriot has not alleged specifically that B & O engaged in fraud or overreaching with respect to the Retainer Agreement. It has, however, made vague reference to B & O having "throw[n] in its fee agreement a choice of law provision," (Mem. Law Supp. Def. Patriot's Mot. Dismiss 11), and defendants Wallin and Giffhorn have stated in declarations that they recalled no discussions regarding the inclusion of the forum-selection or choice-of-law clauses in the Retainer Agreement (Giffhorn Decl. ¶ 3; Wallin Decl. ¶¶ 8, 10). These assertions do not constitute a showing of fraud or overreaching on the part of B & O. It a settled principle of contract law that "a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144,

---

Dismiss 11), far less than the $1,000,000 required by section 5-1402. Plaintiff argues that the statute contemplates the aggregate value of the underlying transaction, rather than the amount in dispute, and claims that Patriot's infringement and licensing program was valued at more than $500,000,000, and that Patriot's license with AMD is worth in excess of $2 million. (Pl.'s Mem. Law Opp'n Def. Patriot's Mot. Dismiss 10.)

Both parties misconstrue the statute. "Section 5-1402 'is not a limitation on the use and effectiveness of forum selection clauses. Rather, it contains a statutory mandate that a clause designating New York as the forum shall be enforceable, in cases involving $1 million or more, regardless of any inconvenience to the parties.'" Int'l Medical Tech., Inc. v. Lintech, LLC, No. 98 Civ. 4794, 2000 WL 1449889 (S.D.N.Y. Sept. 25, 2000) (quoting National Union Fire Ins. Co. v. Worley, 690 N.Y.S.2d 57, 59 (App. Div. 1st Dept. 1999)). Under New York law, forum-selection clauses are thus enforceable in actions involving less than $1 million.

149 (2d Cir. 2004) (quoting Metzger v. Aetna Ins. Co., 125 N.E. 814, 816 (N.Y. 1920)); see also

Joseph M. Perillo, Calamari & Perillo on Contracts § 9.41 (5th ed. 2003) (stating that "a party

who signs an instrument manifests assent to it and may not later complain about not reading or

not understanding"); 27 Samuel Williston & Richard A. Lord, Williston on Contracts § 70:113

(4th ed. 2003) (stating that "ignorance through negligence or inexcusable trustfulness will not

relieve a party from contract obligations"). Patriot had a duty to read and understand the

contents of the Retainer Agreement before accepting it. Such a task would not have been

strenuous: The Retainer Agreement is only four pages in length, and the paragraph that includes

the choice-of-law and forum-selection language is set in the same prominent typeface as the rest

of the agreement. (See Notice Removal. Ex. A. at 3-4.) In light of these considerations, and in

the absence of any showing of fraud or overreaching by B & O, the Court cannot accept Patriot's

suggestion that it should not be bound by the terms of the Retainer Agreement because Wallin

and Giffhorn do not recall having discussed them during negotiations with B & O.

The remaining question is whether enforcement of the forum selection clause would be

unjust or unreasonable. As the Second Circuit has stated:

> The Supreme Court has construed this exception narrowly: forum selection and
> choice of law clauses are "unreasonable" (1) if their incorporation into the
> agreement was the result of fraud or overreaching; (2) if the complaining party
> "will for all practical purposes be deprived of his day in court," due to the grave
> inconvenience or unfairness of the selected forum; (3) if the fundamental
> unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the
> clauses contravene a strong public policy of the forum state.

Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993) (quoting M/S Bremen v. Zapata

Off-Shore Co., 407 U.S. 1, 10-15 (1972)) (internal citations omitted). None of these

considerations are applicable to the instant action. As stated above, Patriot has made no showing

of fraud or overreaching on B & O's part. Enforcing the forum-selection clause would not

deprive Patriot of its day in court—on the contrary, it would provide Patriot with such occasion. By the same token, enforcement of the forum-selection clause will not deprive plaintiff of a remedy. Finally, the Court can conceive of no strong public policy of New York that would be offended by the enforcement of a clause providing that disputes shall be resolved in New York federal or state courts.

For these reasons, the Court denies Patriot's motion to dismiss for lack of personal jurisdiction.

V.     Patriot's Motion to Transfer

Patriot argues that this action should be transferred to California. In so arguing, Patriot invokes the doctrine of *forum non conveniens* as well as the federal statutes governing venue and transfer. (Mem. Law Supp. Def. Patriot's Mot. Dismiss 15-19.) As an initial matter, the Court notes that Patriot may not avail itself of the doctrine of *forum non conveniens* in this action, as the Supreme Court has made clear that the use of *forum non conveniens* for transfer of venue has been superseded by 28 U.S.C. § 1404(a), and that the doctrine "has continuing application only in cases where the alternative forum is abroad." Am. Drudging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994). Accordingly, Patriot's motion to transfer must be decided pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a). Patriot's contention that venue in this action is improper under Rule 12(b)(3) fails by virtue of 28 U.S.C. § 1391(a), the federal statute controlling venue. Section 1391(a) provides that, in diversity actions, venue is proper in the following circumstances:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). As discussed above, Patriot has made itself subject to the personal jurisdiction of the Court by virtue of the forum-selection clause. Therefore, by operation of § 1391, venue is proper. It remains for the Court to decide, then, whether this action should be transferred pursuant to 28 U.S.C. § 1404(a).

### B. 28 U.S.C. § 1404(a)

Patriot's motion to transfer under § 1404(a) is complicated by the presence of the forum-selection clause. Patriot argues that the Court properly may transfer this action because the language of the forum selection clause is permissive, rather than mandatory, and thus does not specify that New York must be the exclusive forum for this action. (Mem. Law Supp. Def. Patriot's Mot. Dismiss 15.) Citing John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributers., Inc., 22 F.3d 51 (2d Cir. 1994), Patriot submits that language denoting exclusivity includes words like "exclusive" and "only," whereas the word "shall" is ambiguous. (Mem. Law Supp. Def. Patriot's Mot. Dismiss 15.) The Boutari Court stated: "The general rule in cases containing forum selection clauses is that [w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." 22 F.3d at 52 (citation omitted). The Court went on to note that "if mandatory venue language is employed, the clause will be enforced." Id. The language in the forum-selection clause in Boutari did not address venue, instead only providing that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts." Id. Here, however, the Retainer Agreement not only indicates the parties' consent to jurisdiction, but also specifies the forum or venue by identifying particular courts. The Retainer Agreement states that "*disputes shall be resolved in the federal or state courts of the City and State of New York*, and the parties to this

31

agreement consent to jurisdiction and venue in the City and State of New York." (Compl. ¶ 3 (emphasis added).) Unlike the contractual language in Boutari, this language specifies the venue of all disputes under the Retainer Agreement. This specification of venue, especially in light of the use of the verb "shall" in the venue clause, is a clear indication of mandatory, rather than permissive, language. See HongKong & Shanghai Banking Corp. Ltd. v. Suveyke, 392 F. Supp. 2d 489, 492 (S.D.N.Y. 2005) (finding that the application of "shall" toward venue rather than jurisdiction was "an additional indication that the parties intended to have mandatory, exclusive jurisdiction in the Philippines"); Baosteel Am., Inc. v. M/V Ocean Lord, 257 F. Supp. 2d 687, 690 (S.D.N.Y. 2003) (finding forum-selection clauses mandatory where "the mandatory term 'shall' is coupled with language granting jurisdiction in one forum without the possibility of jurisdiction in another forum"); cf. Boutari, 22 F.3d at 53 ("'Although the word 'shall' is a mandatory term, here it mandates nothing more than that the [Greek courts] have jurisdiction.'" (quoting Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77-78 (9th Cir. 1987))) (brackets in original).

However, contrary to Patriot's belief, the Court's finding that the forum-selection clause's language is mandatory does not prevent the Court from considering a motion to transfer. The Supreme Court has held that an agreement by the parties that a particular forum shall have "exclusive jurisdiction" over disputes is a "significant factor that figures centrally in the district court's calculus" under § 1404(a). Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). However, as Stewart makes clear, the existence of a mandatory forum-selection clause does not by itself dispose of a motion to transfer under § 1404(a). Although Stewart involved a contract containing a clause giving "exclusive jurisdiction" to one particular forum, id. at 24 n.1, the Court remanded the case for the district court to determine the forum clause's effect on the

32

respondent's § 1404(a) motion, see id. at 32; see also Falconwood Fin. Corp. v. Griffin, 838 F. Supp. 836, 840 (S.D.N.Y. 1993) (citing Stewart, 487 U.S. at 32); Water Energizers, Ltd. v. Water Energizers, Inc., 788 F. Supp. 208, 212-13 (S.D.N.Y. 1992) (conducting a § 1404(a) analysis after finding that a choice-of-forum clause was mandatory). Therefore, the Court will proceed to address the relevant considerations under § 1404(a).

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." 28 U.S.C. § 1404(a) (2000). The statute is designed to prevent waste "of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Generale Bank, New York Branch v. Wassel, 779 F. Supp. 310, 313 (S.D.N.Y. 1991) (Leisure, J.) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)) (internal quotation marks omitted). The defendant-movant bears the burden of establishing that a plaintiffs' choice of forum is inappropriate. Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978) (citations omitted). Specifically, a defendant must establish that (1) the action is one that "might have been brought" in the proposed transferee district, 28 U.S.C. § 1404(a), and (2) the transfer is appropriate given the convenience of parties and witnesses and in the interest of justice, see Royal Ins. Co. of Am. v. Tower Records, Inc., No. 02 Civ. 2612, 2002 WL 31385815, at *2 (S.D.N.Y. Oct. 22, 2002) (Leisure, J.); Lesser v. Camp Wildwood, No. 01 Civ. 4209, 2002 WL 1792039, at *2 (S.D.N.Y. Aug. 2, 2002); Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001). The moving party must "make a clear-cut showing that transfer is in the best interests of the litigation." Miller v. Bombardier Inc., No. 93 Civ. 0376, 1993 WL 378585, at *2 (S.D.N.Y. Sept. 23, 1993) (Leisure, J.) (citing Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F. Supp. 1314, 1321 (S.D.N.Y.1989)); see also Factors Etc., 579 F.2d at

218. "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "A court of appeals will issue a writ of mandamus to correct a district court's disposition of a section 1404 transfer motion for a clear abuse of discretion." Warrick v. Gen. Elec. Co., 70 F.3d 736, 740 (2d Cir. 1995).

The Court assesses the balance of convenience and the interest of justice by weighing: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice based on the totality of the circumstances. See Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 404 (S.D.N.Y. 2004); Reliance Ins., 155 F. Supp. 2d at 56-57; Trehern v. OMI Corp., No. 98 Civ. 0242, 1999 WL 47303, at *2 (S.D.N.Y. Feb. 1, 1999). "There is no rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citing S & S Mach. Corp. v. Gen. Motors Corp., No. 93 Civ. 3237, 1994 WL 529867, at *7 (S.D.N.Y. Sept. 28, 1994)). "Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." Citigroup, 97 F. Supp. 2d at 561 (citing First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989)). Finally, even though it is not dispositive, "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Accordingly, Patriot, in

arguing for transfer under § 1404(a), must "demonstrate exceptional facts explaining why [it] should be relieved from [its] contractual duty." Weiss v. Columbia Pictures Television, Inc., 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992) (Leisure, J.).

1. The Weight Accorded a Plaintiff's Choice of Forum

Plaintiff's choice of forum "is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) (citing In re Warrick, 70 F.3d 736, 741 (2d Cir. 1995)). To overcome the presumption in favor of plaintiffs, defendant must "make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there." Zangiacomi v. Saunders, 714 F. Supp. 658, 660 (S.D.N.Y. 1989) (quoting Schneider v. Sears, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)). "Where the inconvenience to the parties and witnesses are evenly balanced, the plaintiff is entitled to his choice of forum." Id. (quoting Teachers Ins. & Annuity Ass'n of Am. v. Butler, 592 F. Supp. 1097, 1106 (S.D.N.Y. 1984)). Because B & O has chosen New York as its forum, then, other compelling factors must exist to justify transfer of this case.

2. Locus of Operative Facts

This factor favors transfer to a California forum. While the Retainer Agreement was negotiated in both New York and California, the bulk of B & O's representation of Patriot took place in California courts. Three of the five patent infringement actions that first were filed in New York district courts were transferred promptly and consolidated in California. B & O defended Patriot in a declaratory relief action that Intel Corporation filed and litigated in California. B & O filed and litigated the Inventorship Action in California, and it was in this

action that B & O was disqualified, a key event leading to the alleged breach of the Retainer Agreement, which breach lies at the center of this action.

### 3. Convenience of the Forum for Witnesses

The convenience of the forum for witnesses "is probably considered the single most important factor in the analysis of whether a transfer should be granted." Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 516 (S.D.N.Y. 2004). When weighing this factor, courts must consider the materiality, nature, and quality of each witness, in addition to the mere number of witnesses in each district. See Houlihan Lokey Howard & Zukin Capital, Inc. v. The Protective Group, Inc., No. 05 Civ. 4741, 2005 WL 3367044 (S.D.N.Y. Dec. 12, 2005) (citing Royal & Sunalliance, 1167 F. Supp. 2d at 577). A party moving to transfer on the ground that witnesses will be inconvenienced is obliged to "name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum." Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989) (citing, *inter alia*, Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978)). Patriot has not provided this information. Therefore, although it appears from the pleadings and accompanying affidavits that a number of potential witnesses in this case are located in California, the Court cannot give this factor much weight in its analysis.

### 4. Convenience of the Parties

This factor does not weigh in favor of transferring the action to California. It is fair to say that Patriot, a California corporation, will suffer some inconvenience if the case remains in this Court. At the same time, however, it is equally true that B & O, a New York law firm, will be inconvenienced if the case is transferred to the Northern District of California. "The parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely

36

shift the inconvenience to the other party." Wechsler v. Mache Int'l Trade, Inc., No. 99 Civ.

5725, 1999 WL 1261251, at \*6 (S.D.N.Y. Dec. 27, 1999); see also Federman Assocs. v.

Paradigm Med. Indus., Inc., No. 96. Civ. 8545, 1997 WL 811539, at \*3 (S.D.N.Y. April 8,

1997) ("Regardless of the forum in which the action takes place, one party will be obligated to

travel. Accordingly, this factor weighs neutrally in the instant analysis."); Dwyer v. Gen. Motors

Corp., 853 F. Supp. 690, 693 (S.D.N.Y. 1994) ("A transfer should not merely shift the burden of

inconvenience from one party to the other."). Moreover, "[i]n a case where the parties have

already agreed to a particular forum, the 'convenience of the parties' weighs heavily in favor of

hearing the case in the designated court." Falconwood Fin. Corp. v. Griffin, 838 F. Supp. 836,

840 (S.D.N.Y. 1993); Full-Sight Contact Lens Corp. v. Soft Lenses, Inc. 466 F. Supp. 71, 74

(S.D.N.Y. 1978) ("Plaintiff cannot be heard to complain about inconveniences resulting from an

agreement it freely entered into."). In light of these considerations, this factor is, at best for

Patriot, neutral, and certainly does not weigh in favor of transfer.

5.    Other Factors

        a.    Availability of Process to Compel Attendance of Unwilling Witnesses

Because, as noted above, Patriot has not taken the pains to specify the witnesses who will

be appearing in this action, the Court cannot give this factor much weight. In addition, as the

pleadings and accompanying affidavits indicate that many potential witnesses are scattered

between California, Georgia, Maine, Texas, and New Jersey, there appears to be no single

jurisdiction with subpoena power to compel the attendance of all unwilling witnesses.

Therefore, this factor does not weigh in favor of transfer.

37

### b. Relative Means of the Parties

This factor has not been addressed by Patriot, and the Court is thus unable to find that this factor weighs in favor of transfer.

### c. The Forum's Familiarity with the Governing Law

Because the Court has determined that New York law governs this dispute, this factor weighs in favor of a New York forum and against transfer.

### d. The Location of Documents and Relative Ease of Access to Sources of Proof

As to this factor, the moving party must establish the location and importance of the documents in question. See Falconwood Fin. Corp., 838 F. Supp. at 841 (citing 15 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3853, at 425 (2d ed. 1986)). Again, because Patriot has not provided this information, the Court cannot find that this factor weighs in favor of transfer.[14]

### e. The Interest of Justice

As to the final factor, trial efficiency and the interest of justice based on the totality of the circumstances, the Court's consideration of whether transfer is in the interest of justice is "based on the totality of the circumstances," Mitsui Marine & Fire Ins. Co. v. Nankei Travel Int'l, 245 F. Supp. 2d 523, 527 (S.D.N.Y. 2003) (quoting TM Claims Serv. v. KLM Royal Dutch Airlines, 143 F. Supp. 2d 402, 407 (S.D.N.Y. 2001)), and "relates primarily to issues of judicial economy," id. (citing Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 578 (S.D.N.Y. 2001)). Patriot, in its moving papers and supporting affidavits, has supplied the Court

---

[14] This factor generally is not a significant one when the question is merely one of the ease of transporting documents, as opposed to whether transfer will bring necessary documents within the subpoena power. See Falconwood Fin. Corp., 838 F. Supp. 836, 841 (S.D.N.Y. 1993) (citing Charles A. Wright et al., Federal Practice and Procedure § 3853, at 425 (2d ed. 1986)); see also Coker v. Bank of Am., 984 F. Supp. 757, 766 (S.D.N.Y. 1997) (Keenan, J.) (finding the location of documents factor neutral in light of "today's era of photocopying, fax machines and Federal Express").

with no reasons why transfer would further trial efficiency and the interest of justice.[15] As it cannot conceive of a reason why transferring this case to California would increase judicial efficiency, the Court finds that this factor does not weigh in favor of transfer.

In sum, the Court finds that Patriot has not met its burden of showing that a weighing of the above factors favors transfer, particularly in light of the forum-selection clause. In particular, Patriot has failed to "demonstrate exceptional facts" why the forum-selection clause should not be enforced. Weiss v. Columbia Pictures Television, Inc., 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992). Patriot's motion to transfer pursuant to § 1404(a), therefore, is denied.

VI.   Defendant's Motion to Dismiss for Failure to State a Claim

Patriot also moves to dismiss B & O's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss for failure to state a claim for which relief may be granted, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (quoting Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000)); see also Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976); Walker v. City of New York, 974 F.2d 293, 298 (2d Cir. 1992). Thus, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59, 62-63 (2d Cir. 1997). A party's claim should not be dismissed in this instance "unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

[15]  With regard to judicial economy, the Court notes that while the Southern District of New York is characterized by docket congestion, so, too, is the Northern District of California.

support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Lipsky v. Commonwealth United Corp., 551 F.2d 887, 894-95 (2d Cir. 1976).

Defendants argue that the Court should dismiss this matter pursuant to Rule 12(b)(6) because B & O failed to provide Patriot notice of its MFAA arbitration rights before filing the instant action. This argument rehashes defendants' contention, addressed above, that the Court lacks subject matter jurisdiction, and thus can be disposed of promptly. The Court has already found that New York law governs this action and, therefore, that B & O is not bound by the requirements of the MFAA. For that reason, the Court denies Patriot's motion to dismiss for failure to state a claim.

## VII.    Defendant's Motion to Strike

Patriot also moves, pursuant to Federal Rule of Civil Procedure 12(f), to strike from B & O's complaint numerous references to communications between B & O and Patriot that Patriot asserts are privileged attorney-client communications. (Mem. Law Supp. Def. Patriot's Mot. Dismiss 19.) In particular, Patriot submits that B & O's pleading of privileged communications is impertinent and immaterial under Rule 12(f). (Def. Patriot's Reply Mem. Law Supp. Mot. Dismiss 4.) Rule 12(f) allows the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). The Second Circuit has made clear that district courts should be wary when deciding whether to grant a Rule 12(f) motion on the ground that the matter is impertinent and immaterial. See Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976) ("Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided.").

Accordingly, courts must deny such a motion "unless it can be shown that no evidence in support of the allegation would be admissible." Id.; see also Gleason v. Chain Serv. Rest., 300 F. Supp. 1241 (S.D.N.Y. 1969), aff'd, 422 F.2d 342 (2d Cir. 1970).

The Court is not convinced at this time that Patriot has satisfied its burden of demonstrating grounds for striking certain pleadings. Patriot has offered no case law or argument in support of its motion. Nor has it submitted any evidence, in the form of a declaration or otherwise, that the allegations in the complaint contain privileged information. Moreover, while Patriot, in its memorandum in support of its motion to dismiss, originally stated that it had not waived the attorney-client privilege (Mem. Law Supp. Def. Patriot's Mot. Dismiss 19), the Court has learned that Patriot since has filed suit against B & O in California.[16] See Letter from Russel H. Beatie, Esq., to the Court, dated April 7, 2006 at 2. This development raises the possibility that Patriot may have waived its right to invoke the attorney-client privilege with respect to those communications referenced in the complaint. Therefore, because it is not clear that no evidence in support of those allegations in the complaint that reference potentially privileged communications between B & O and Patriot would be admissible, the Court denies Patriot's motion to strike at this time.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand is DENIED. Defendant Giffhorn's and Wallin's motions to dismiss all claims against them for lack of personal jurisdiction are GRANTED. Defendant Patriot's motions to dismiss B & O's claims for breach of contract, quantum meruit, and unjust enrichment for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim are DENIED. Defendant Patriot's motion to transfer is

---

[16] Patriot had noted in its memorandum that it was "presently evaluating legal malpractice claims against B & O." (Mem. Law Supp. Def. Patriot's Mot. Dismiss 19.)

also DENIED, as is its motion to strike. The Parties are ordered to appear before this Court at

the United States Courthouse, 500 Pearl Street, Courtroom 18B, New York, New York, on

Wednesday, May 25, 2006, at 11 a.m. for a pre-trial conference.

**SO ORDERED.**

New York, New York
May 9 , 2006

Peter K. Leisure
U.S.D.J.

Copies of this Opinion and Order have been mailed to:

Russel H. Beatie, Esq.
Beatie and Osborn LLP
521 Fifth Avenue
New York, New York 10175

Jared B. Stammel, Esq.
Stamell & Schager, LLP
One Liberty Plaza, 35th Floor
New York, New York 10006-1404

Charles T. Hodge, Esq.
Post, Kirby, Noonan & Sweat LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, California 92101-3387